**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Devon C. Knightner,<br><br>              Plaintiff,<br><br>  vs.<br><br>Blue Cross and Blue Shield of South Carolina,<br><br>             Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

**COMES NOW** Plaintiff, Devon C. Knightner (hereinafter "Plaintiff") alleging the following in her Complaint against Defendant, Blue Cross Blue Shield of South Carolina (hereinafter "BCBS" or "Defendant"):

## NATURE OF THE ACTION

1.      This is an action seeking damages and equitable relief for violations of the; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. 2000e(k); the Americans with Disabilities Act as Amended ("ADAAA" or the "Act"), 42 U.S.C. § 12101, *et. seq.*, as well as violations of South Carolina Human Affairs law and common law.

2.      This action arises from Defendant's failure to accommodate, discriminatory and harassing conduct, and constructive discharge of Plaintiff from her position of employment with Defendant.

## PARTIES

3.   Plaintiff is a Black female citizen and resident of Richland County, South Carolina, and has remained so at all times relevant to the allegations of this Complaint.

4.   Defendant BCBS is a healthcare insurance provider doing business in Richland County,

South Carolina.

5.  At all times relevant to the allegations of this Complaint, the Defendant acted by and through their agents and employees, who at all such times were acting within the course and scope of their employment making the Defendant responsible for the acts and omissions of the employees pursuant to the principle of *respondeat superior*.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this matter and *in personam* jurisdiction based upon 28 U.S.C. §1331, Plaintiff resides in this District; the Defendant does business and maintains location and employees in this District; and, a substantial part of the events giving rise to Plaintiff's claims occurred in this District.  The Court also has subject matter under 28 U.S.C §1332.

7.  Venue is proper in this district under 28 U.S.C. §1391(b) as the case in controversy, as well as the wrongful conduct at issue, occurred within this judicial district.

8.  The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

## CONDITIONS PRECEDENT

9.  Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below.

10. As a result of the Defendant's discriminatory conduct, which is described in full below, Plaintiff timely filed a complaint with the South Carolina Human Affairs Commission ("SCHAC") alleging disability and race and pregnancy discrimination, hostile work environment and retaliation against the Defendant.

11. In October 2015, Plaintiff received a Notice of Right to Sue from SCHAC regarding the

complaint described in Paragraph 8 and was advised that she had one-hundred-twenty (120) days to file her claims in court. This correspondence is dated October 15, 2015, and is attached as **Exhibit A**.

12. In November 2015, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") regarding the complaint described above in Paragraph 8 and was advised that she had ninety (90) days to file her claims in court.. This correspondence is dated November 3, 2015, and is attached as **Exhibit B**.

13. Plaintiff has timely filed the foregoing action within one hundred and twenty (120) days of the date on which she received the SCHAC Notice of Right to Sue in Paragraph 9 and within ninety (90) days of the date on which she received the EEOC Notice of Right to Sue described above in Paragraph 10.

## FACTUAL ALLEGATIONS

14. The allegations set forth above are realleged and incorporated herein by reference.

15. Plaintiff began her employment with the Defendant on August 31, 2010, most recently having served as a Provider Relations Representative.

16. This position required a great deal of standing in order to make presentations.

17. In response to a car accident which Plaintiff was involved in 2011, Plaintiff submitted an accommodation request to BCBS's human resources department.

18. Specifically, Plaintiff requested the ability to take frequent breaks and that she was provided a chair with a back and a pillow.

19. Plaintiff also provided BCBS notice that she had a disability (back injury) which required lumbar support.

20. Plaintiff was provided a metal stool without back support by Defendant, which Plaintiff

3

refused to use in fear of exacerbating her existing back injury.

21. Plaintiff made a complaint to human resources and was provided a padded chair three (3) months after the accommodation request was made.

22. In 2012, Plaintiff was on intermittent Family Medical Leave ("FMLA") due to her back injuries, her high risk pregnancy and on account of her shoulder surgery in February 2012.

23. On July 3, 2013, during Plaintiff's intermittent FMLA leave, she returned to work in order to retrieve some expensive personal belongings that were left at the office.

24. Plaintiff's key card was fully functional at the time of entry and Plaintiff never was advised by BCBS that she could not be in the building while on FMLA leave.

25. BCBS never disciplined Plaintiff for entering the building to retrieve her personal belongings.

26. On the same day Plaintiff returned to retrieve personal items, Plaintiff was approached by her supervisor, Amy Jo Tyson (hereinafter "Tyson"), who began berating Plaintiff for being on the premises.

27. Tyson exhibited continuing patterns of threats towards Plaintiff during their conversation.

28. While conversing, Tyson slapped Plaintiff on her body and yelled at her [Plaintiff].

29. Plaintiff was pregnant during this incident and feared for both her safety and the safety of her unborn child. Plaintiff's pregnancy was already labeled as "high risk."

30. On July 3, 2013, after the incident described above, Plaintiff filed an internal complaint against Tyson to Anthony Davis (hereinafter "Davis"), Human Resources Generalist, and also filed a police report against Tyson with the Richland County Sheriff's Office.

31. After the internal complaint was filed, BCBS failed to take any immediate action against

Tyson. After following up with human resources, Plaintiff was advised Tyson had been reprimanded.

32. In or around November 2013, Plaintiff's FMLA leave expired and she returned to work.

33. Upon Plaintiff's return, Tyson remained Plaintiff's supervisor.

34. Tyson renewed her pattern and practice of harassing Plaintiff at work.

35. Tyson's continued harassing actions made Plaintiff very uncomfortable since Tyson previously assaulted her [Plaintiff] and BCBS failed to take action after Plaintiff reported Tyson's conduct.

36. In November 2013, Tyson forced Plaintiff to breast pump in her car, bathroom or in a dirty conference room. Plaintiff contacted human resources and was informed BCBS only had the obligation of providing her with four walls, a chair and electricity, nothing else.

37. Plaintiff knew of other similarly situated white female employees that were provided more reasonable accommodations to pump in private and in more comfortable surroundings. Other similarly situated white female employees also were allowed to go home to pump.

38. Tyson repeatedly made negative remarks to Plaintiff regarding her attire, which was very similar to attire Tyson and other similarly situated white counterparts wore on a daily basis. On several occasions Tyson even sent Plaintiff home for what Tyson considered inappropriate attire.

39. Tyson was allowed to measure Plaintiff's skirts and commented that Plaintiff's "curves were different."

40. Plaintiff notified human resources of this racially discriminatory treatment but BCBS failed to address the situation.

41. On or around November 14, 2013, Plaintiff was approached by Tyson and Senior

5

Providers Relation Representative, Dustin Welch (hereinafter "Welch") about alleged negative remarks Plaintiff made about Tyson. Plaintiff never was provided any verification of the statements she allegedly made.

42. Tyson approached Plaintiff in a physically threatening and aggressive manner.

43. Because of Plaintiff's prior encounters with Tyson and complaints she made against her, Plaintiff felt physically threatened and called BCBS security.

44. In response to Plaintiff contacting security, Tyson told Plaintiff "call the fucking cops again all you want to you stupid bitch!"

45. After the incident, Plaintiff made another report to BCBS' human resources department.

46. BCBS' Human Resources took no action to discipline Tyson. Many of Plaintiff's co-workers witnessed the November 14th incident and made statements to human resources corroborating Plaintiff's report, but BCBS took no action to remedy the situation.

47. Upon information and belief, BCBS maintains a policy against the use of profanity and the creation of a hostile work environment, but failed to protect Plaintiff as an employee.

48. On or around December 3, 2013, Plaintiff was called into the human resources department and notified that she was being placed on indefinite probation.

49. Plaintiff was confused and did not understand why she was being placed on indefinite probation. Given the short timeframe, Plaintiff believes her probation was the result of her multiple complaints of race discrimination, hostile work environment, disability accommodation requests, reports concerning her supervisor's behavior and BCBS' failure to protect her [Plaintiff].

50. Plaintiff was informed the punishment was due to violating a policy against using cell phones during a scheduled work exam.

6

51. Plaintiff had the permission of the testing proctor to have her cell phone on her desk during the exam in case she was required to coordinate with her child's nanny to provide additional breast milk for her child.

52. Plaintiff did not use the cell phone during testing and was permitted by the testing proctor to have it on her desk as an accommodation in the event she had to address her child's nursing needs.

53. As a result of being placed on the indefinite suspension, Plaintiff was not allowed to seek employment outside of her department, even though Plaintiff had made multiple complaints against her supervisor Tyson, and ultimately was forced to work under her harasser.

54. Between December 2, 2013 and April 25, 2014, Plaintiff continuously was harassed by Tyson without being removed from under her supervision and without BCBS taking any action to remedy the environment.

55. Plaintiff made a request to be removed from under Tyson's supervision, but the request was denied by BCBS management.

56. Tyson worked in close proximity with Plaintiff which made it convenient for Tyson to continue her bullying, intimidation, harassing, and discrimination against Plaintiff.

57. Throughout 2014, Tyson would block Plaintiff as she attempted to walk through the hallways at work and would sit in on her presentations in effort to further intimidate and harass Plaintiff. Tyson did not repeatedly sit in on presentations made by other similarly situated white counterparts of Plaintiff.

58. Plaintiff again reported Tyson's behavior to BCBS Human Resources Manager, Heather Hamby (hereinafter "Hamby"), but no action was taken by BCBS to address the situation.

59. Although BCBS was aware of Plaintiff's hostile working environment because of her

multiple complaints of discrimination and assault charges filed against Tyson, BCBS continuously required Plaintiff to work in close proximity and under the supervision of Tyson.

60. In or around April 14, 2014, BCBS issued Plaintiff a Corrective Action Report for purportedly being absent for nine (9) days of work from March and April 2014. Plaintiff's absences were previously approved during the alleged timeframe.

61. The disciplinary report was false and completed in direct retaliation for Plaintiff's complaints.

62. Plaintiff signed the report under protest and notified BCBS human resources she received approval from Hamby to be absent from work on the days listed in the report.

63. As a result of Plaintiff's continuing stress, humiliation and mental anxiety of working in the hostile work environment fostered and maintained by BCBS, Plaintiff had no other option but to submit a letter of resignation on April 25, 2014.

64. Plaintiff was called into a meeting with Hamby to discuss her work schedule for the next two weeks.

65. After the meeting, Plaintiff again was called to meet with Hamby and was told she needed to turn in her badge immediately. Plaintiff told Hamby that she did not want to turn in her badge and wanted to work and do her job for the next two weeks. Hamby told Plaintiff this was not an option and Plaintiff was forced to leave the premises.

## FOR A FIRST CAUSE OF ACTION
**(Race Discrimination/Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.)**

66. The allegations set forth above are realleged and incorporated herein by reference.

67. From July 2013 until Plaintiff's constructive discharge, Plaintiff has been subjected

racially motivated disparate treatment while other similarly situated white employees were treated better.

68. Similarly situated white employees were held to different standards, provided accommodations, and were not subjected to hostile work environment.

69. Plaintiff's disparate treatment included but was not limited to the following:

a. White female employees being allowed to go home and breast feed their children or go to clean and appropriate BCBS areas to breast feed whereas Plaintiff was forced to pump for her newborn son in less than sanitary conditions and not allowed to go home;

b. Plaintiff being repeatedly harassed by her supervisor and on several occasions told to go home and change clothes because her "curves were different" when similarly situated white counterparts and Plaintiff's white supervisor, Tyson were not;

c. Plaintiff being told by Tyson "call the fucking cops again all you want to you stupid bitch," in response to Plaintiff contacting security after feeling threatened by Tyson;

d. Plaintiff's attire being labeled as inappropriate whereas Tyson's or other white female employees wearing similar attire were deemed to be dressed appropriately; and

e. Plaintiff being told by her supervisor that her "curves were different" than her white female counterparts.

70. Plaintiff made numerous complaints to BCBS about the race discrimination she was suffering, but nothing was done to address or remedy those complaints.

9

71. The above disparate treatment amounts to unlawful race discrimination prohibited by Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1991 and amendments thereto and has proximately caused the Plaintiff a loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering. The Plaintiff is entitled to an award of actual damages as well as punitive damages for the willful and intentional acts of the Defendant through its agents and employees, and for reasonable attorney's fees and costs of this action.

## FOR A SECOND CAUSE OF ACTION
**(Race Discrimination/Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.)**

72. The allegations set forth above are realleged and incorporated herein by reference.

73. Plaintiff, a black female, was subject to unwelcomed racially charged hostile work environment that altered the terms and conditions of her employment. The harassment included but was not limited to the following:

    a.  White female employees being allowed to go home and breast feed their children or go to clean and appropriate BCBS areas to breast feed whereas Plaintiff was forced to pump for her newborn son in less than sanitary conditions and not allowed to go home;

    b.  Plaintiff being repeatedly harassed by her supervisor and on several occasions told to go home and change clothes because her "curves were different" when similarly situated white counterparts and Plaintiff's white supervisor, Tyson were not;

10

 c. Plaintiff being told by Tyson "call the fucking cops again all you want to you stupid bitch," in response to Plaintiff contacting security after feeling threatened by Tyson;

 d. Plaintiff's attire being labeled as inappropriate whereas Tyson's or other white female employees wearing similar attire were deemed to be dressed appropriately; and

 e. Plaintiff being told by her supervisor that her "curves were different" than her white female counterparts.

74. The actions of BCBS and BCBS employees created a sufficiently severe or pervasive environment, which altered the conditions of Plaintiff's employment.

75. The work environment fostered by BCBS created an abusive atmosphere where Plaintiff was subject to constant ridicule, degradation, humiliation, and fear.

76. Other similarly situated white employees of BCBS have not been terminated or reprimanded under the same or similar circumstances.

77. Despite numerous complaints made to BCBS human resources department manager, to Plaintiff's knowledge, no other similarly situated white employee was reprimanded or terminated for their actions against Plaintiff.

78. BCBS discriminated against Plaintiff on the basis of her race with malice, mean-spirit, and reckless intent to harm and is liable for the same.

79. Such treatment, described herein, constitutes unlawful discrimination in violation of Title VII for which BCBS is liable.

80. As a direct and proximate result of the racial discrimination alleged herein, Plaintiff was

terminated and otherwise suffered disparate treatment.  Plaintiff is entitled to all damages caused thereby including back pay, front pay, loss of earning capacity, lost benefits; as well as, emotional distress, loss of reputation, humiliation, embarrassment, mental anguish, and the loss of his employment and future potential earnings. Plaintiff is entitled to punitive damages for the same; as well as, the attorney's fees and costs of this action

## FOR A THIRD CAUSE OF ACTION
### (Disparate Impact Pregnancy Discrimination Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et. seq., as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §§ 2000e(k))

81. The allegations set forth above are realleged and incorporated herein by reference.

82. The discriminatory acts that constitute BCBS' pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

83. As a direct result of BCBS' discriminatory policies and/or practices ad described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

84. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by state and federal law.

## FOR A THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.)

85. The allegations set forth above are realleged and incorporated herein by reference.

86. Plaintiff engaged in protected activities, including making internal complaints of unlawful harassment/discrimination by her supervisor to BCBS.

87. BCBS and its employees took adverse actions against Plaintiff with the purpose of retaliating against her because of her participation in protected activities.

12

88. The adverse actions taken by BCBS and its employees include but are not limited to:

   a. Providing Plaintiff with an inappropriate metal stool after she requested an accommodation for her back injury;

   b. Forcing Plaintiff to breast feed her newborn child in less than sanitary conditions or in her car;

   c. Advising Plaintiff that BCBS only had to provide her four (4) walls to breast feed her newborn child after she complained to BCBS human resources;

   d. Only providing Plaintiff a reasonable accommodation after she reported the metal stool to BCBS human resources and again requested a reasonable accommodation;

   e. Being falsely accused by her supervisor of making negative comments about her;

   f. Being verbally assaulted by her supervisor for contacting security when she felt threatened;

   g. Being physically assaulted by her supervisor for coming to the office to retrieve personal effects;

   h. Being placed on indefinite probation and forced to work under her harassing supervisor after making numerous complaints and reports of harassment and discrimination;

   i. Being reprimanded and falsely accused of using her cell phone for a work exam after she received permission from the exam proctor to keep her cell phone on her desk in case she needed to tend to her newborn child;

   j. Receiving a Corrective Action Report for unapproved absences after reporting multiple instances of harassment and discrimination to BCBS;

k. Failing to address any complaints or reports of discrimination or harassment by Plaintiff, which led to her constructive discharge.

89. These actions taken against Plaintiff all are the result of the planned and concerted effort to retaliate against Plaintiff for the concerns made to BCBS concerning Plaintiff's treatment and work environment.

90. Defendant is liable to the Plaintiff for the willful, wrongful and bad faith retaliation against the Plaintiff for opposing unfair and egregious race discrimination and hostile working environment created by the Defendant in order to push the Plaintiff out of her position. The Plaintiff is entitled to an award of actual damages as well as punitive damages for the willful and intentional acts of the Defendant through its agents and employees, for reasonable attorney's fees and costs of this action.

91. As a result, Plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering. The Plaintiff is entitled to an award of actual and compensatory damages as well as punitive damages for the willful and intentional acts of the Defendant through its agents and employees, and for reasonable attorney's fees and costs of this action

**FOR A FOURTH CAUSE OF ACTION**
**(Constructive Discharge in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.)**

92. The allegations set forth above are realleged and incorporated herein by reference.

93. Plaintiff, a black female, was subjected to a racially discriminatory treatment which created a hostile working environment.

94. As described above, Plaintiff made numerous complaints to the appropriate persons to

14

address the discriminatory treatment.

95. The Defendant's actions were deliberate and indifferent to the Plaintiff's right to be free from discrimination.

96. As a result of the Defendant's actions and the intolerable hostile work environment, Plaintiff was constructively discharged from her employment.

97. As a result, Plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering. Plaintiff is entitled to an award of actual and compensatory damages as well as punitive damages for the willful and intentional acts of the Defendant through its agents and employees, and for reasonable attorney's fees and costs of this action.

### FOR A FIFTH CAUSE OF ACTION
**(Disability Discrimination/Failure to Reasonably Accommodate
Violation of the Americans with Disabilities Act as amended ("ADAAA") 42
U.S.C. § 12112 et. seq.)**

98. The allegations set forth above are realleged and incorporated herein by reference.

99. Pursuant to the ADAAA, a disability is "a physical or mental impairment that substantially limits one or more major life activities." In addition, the Act includes a record of a substantially limiting impairment or being regarded as having a substantially limiting impairment.

100.    Plaintiff's high risk pregnancy and other medical conditions as described in this Complaint constituted a disability within the meaning of the ADAAA. See 42 U.S.C. 12101(2).

101.    The ADAAA prohibits discrimination based on disability, including pregnancy, and defines discrimination as including a failure to "make reasonable accommodations to

the known physical or mental limitations of an otherwise qualified [employee with a disability." 42 U.S.C. §§ 12112(a), 12112(b)(5).

102. Plaintiff requested a reasonable accommodation to be allowed to take frequent breaks and that she be given a chair with a back and pillow.

103. BCBS was put on notice of Plaintiff's disabilities and her need for lumbar support.

104. Rather than simply accommodate Plaintiff, BCBS provided Plaintiff with a metal stool which in no way even attempted to provide support for Plaintiff's disability. If anything, this "accommodation" would have further aggravated Plaintiff's back injury.

105. BCBS' actions violated Title I of the ADAAA by failing to accommodate Plaintiff's known physical limitations brought on by her pregnancy and resulted in a great deal of emotional and physical distress as she was forced to keep working until provided a reasonable accommodation.

106. Plaintiff suffered damages as a result of BCBS's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of bringing this action.

107. As a result of the above conduct, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

16

108.     BCBS's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff; and therefore Plaintiff is entitled to recover punitive damages from the Defendant.

**FOR A SIXTH CAUSE OF ACTION**
**(Discriminatory Termination Based on Perceived Disability Violation of Americans with Disabilities Act as amended 42 U.S.C. §§ 12203 et. seq.)**

109.     The allegations set forth above are realleged and incorporated herein by reference.

110.     BCBS regarded Plaintiff as suffering from an impairment that substantially limits one or more major life activities.

111.     BCBS violated the ADAAA when it refused to provide Plaintiff a reasonable accommodation despite its perception that she was an "individual with a disability."

112.     Plaintiff suffered damages as a result of BCBS's unlawful acts, including past and future lost wages and benefits, past and future physical and emotional distress, and the costs of brining this action.

**FOR A SEVENTH CAUSE OF ACTION**
**(Race Discrimination in Violation of S.C. Code Ann. §§ 1-13-80, *et seq*.)**

113.     The allegations set forth above are realleged and incorporated herein by reference.

114.     BCBS subjected Plaintiff to severe and pervasive race discrimination and harassment and created a race-based hostile working environment that altered the terms and conditions of her employment. This harassment included but was not limited to the following:

   a.  White female employees being allowed to go home and breast feed their children or go to clean and appropriate BCBS areas to breast feed whereas Plaintiff was forced to pump for her newborn son in less than sanitary conditions and not allowed to go home;

17

b. Plaintiff being repeatedly harassed by her supervisor and on several occasions told to go home and change clothes because her "curves were different" when similarly situated white counterparts and Plaintiff's white supervisor, Tyson were not;

c. Plaintiff being told by Tyson "call the fucking cops again all you want to you stupid bitch," in response to Plaintiff contacting security after feeling threatened by Tyson;

d. Plaintiff's attire being labeled as inappropriate whereas Tyson's or other white female employees wearing similar attire were deemed to be dressed appropriately; and

e. Plaintiff being told by her supervisor that her "curves were different" than her white female counterparts.

115. The foregoing allegations are merely examples of Defendants' regular and repeated unlawful conduct, and are not intended to be an exhaustive account.

**FOR AN EIGHTH CAUSE OF ACTION**
**(Sex Discrimination in Violation of S.C. Code Ann. §§ 1-13-80, *et seq*.)**

116. The allegations set forth above are realleged and incorporated herein by reference.

117. BCBS subjected Plaintiff to severe and pervasive sex discrimination and harassment as a result of her high-risk pregnancy. In addition, BCBS created a sex-based hostile working environment that altered the terms and conditions of her employment. This harassment included but was not limited to the following:

a. White female employees being allowed to go home and breast feed their children or go to clean and appropriate BCBS areas to breast feed whereas Plaintiff was

18

forced to pump for her newborn son in less than sanitary conditions and not allowed to go home;

b. Plaintiff being repeatedly harassed by her supervisor and on several occasions told to go home and change clothes because her "curves were different" when similarly situated white counterparts and Plaintiff's white supervisor, Tyson were not; and

c. Being reprimanded and falsely accused of using her cell phone for a work exam after she received permission from the exam proctor to keep her cell phone on her desk in case she needed to tend to her newborn child.

118.    The foregoing allegations are merely examples of Defendants' regular and repeated unlawful conduct, and are not intended to be an exhaustive account.

## FOR A NINTH CAUSE OF ACTION
**(Disability Discrimination in Violation of S.C. Code Ann. §§ 1-13-80, *et seq*.)**

119.    The allegations set forth above are realleged and incorporated herein by reference.

120.    Plaintiff's medical conditions were physical and mental impairments that substantially limited one or more major life activity.

121.    In addition, BCBS and BCBS employees regarded Plaintiff as having a disability as defined under state and federal law.

122.    BCBS and BCBS employees discriminatory acts included but are not limited to the following:

a. Failing to provide a reasonable accommodation for her medical conditions;

b. Providing, in bad faith, an accommodation that BCBS knew or should have known would not assist Plaintiff; and

19

    c.  Falsely disciplining Plaintiff for relying on an exam proctor's accommodation to keep her cell phone on her desk during a work exam in case her newborn child required a breast feeding;

123.   The foregoing allegations are merely examples of Defendants' regular and repeated unlawful conduct, and are not intended to be an exhaustive account.

### FOR A TENTH CAUSE OF ACTION
**(Retaliation in Violation of S.C. Code Ann. §§ 1-13-80, *et seq*.)**

124.   The allegations set forth above are realleged and incorporated herein by reference.

125.   Plaintiff engaged in protected activities, including making internal complaints of unlawful harassment/discrimination by her supervisor to BCBS.

126.   BCBS took adverse actions against Plaintiff with the purpose of retaliating against her because of her participation in the protected activities.

127.   The adverse actions taken by BCBS and BCBS employees include but are not limited to:

    a.  Providing Plaintiff with an inappropriate metal stool after she requested an accommodation for her back injury;

    b.  Forcing Plaintiff to breast feed her newborn child in less than sanitary conditions or in her car;

    c.  Advising Plaintiff that BCBS only had to provide her four (4) walls to breast feed her newborn child after she complained to BCBS human resources;

    d.  Only providing Plaintiff a reasonable accommodation after she reported the metal stool to BCBS human resources and again requested a reasonable accommodation;

20

e.  Being falsely accused by her supervisor of making negative comments about her;

f.  Being verbally assaulted by her supervisor for contacting security when she felt threatened;

g.  Being physically assaulted by her supervisor for coming to the office to retrieve personal effects;

h.  Being placed on indefinite probation and forced to work under her harassing supervisor after making numerous complaints and reports of harassment and discrimination;

i.  Being reprimanded and falsely accused of using her cell phone for a work exam after she received permission from the exam proctor to keep her cell phone on her desk in case she needed to tend to her newborn child;

j.  Receiving a Corrective Action Report for unapproved absences after reporting multiple instances of harassment and discrimination to BCBS;

k.  Failing to address any complaints or reports of discrimination or harassment by Plaintiff, which led to her constructive discharge.

128.    These actions taken against Plaintiff and the actions which has resulted in her Discrimination, harassment, and damages all are the result of the planned and concerted effort to retaliate against Plaintiff for the concerns made to BCBS regarding Plaintiff's treatment.

129.    As a result, Plaintiff has suffered damages, which include but are not limited to, loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering.  Plaintiff is entitled to an award of actual and compensatory damages as well as punitive damages for the willful

and intentional acts of BCBS through its agents and employees, and for reasonable attorney's fees and costs of this action

**WHEREFORE**, having fully set forth her allegations against Defendant, Plaintiff respectfully prays that this Court enter judgment against Defendant by:

a. Awarding Plaintiff actual and compensatory damages for economic and non-economic injuries;

b. Awarding Plaintiff costs and disbursements in this action, including reasonable attorneys' fees and costs, and expert fees and costs;

c. Awarding Plaintiff punitive damages, as permitted by law;

d. Awarding Plaintiff prejudgment and other interest on all monetary damages, as permitted by law; and

e. Granting Plaintiff such other and further relief as this Court may deem just and proper.

**DICKEY LAW GROUP, LLC**

By: s/Joseph D. Dickey, Jr.
  Joseph D. Dickey, Jr.
  Fed. Bar No. 11311
  1612 Marion Street, Suite 312
  Columbia, SC 29201
  Email:  joseph@dickeylawsc.com
  Phone: (803) 380-5575
  Fax: (803) 380-5576

***Attorney for Plaintiff***

Columbia, South Carolina
February 1, 2016

22